# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN E. JELEN,  Plaintiff,  v.  LACKAWANNA STATE PRISON, *et al.*,  Defendants. | NO. 3:18-CV-01726  (JUDGE CAPUTO) |

## MEMORANDUM

Plaintiff Sean Jelen's Complaint (Docs. 1, 8, 9) is before me for preliminary screening pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B).

### I. Screening *Pro Se In Forma Pauperis* Complaints

When a litigant seeks to proceed *in forma pauperis*, without payment of fees, 28 U.S.C. § 1915 requires the court to screen the complaint. *See* 28 U.S.C. § 1915(e)(2)(B). Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court must screen the complaint. *See* 28 U.S.C. § 1915A(a). Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1)-(2); *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013).

A complaint is frivolous if it lacks an arguable basis either in law or in fact. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)). When deciding whether the complaint fails to state a claim for which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule

12(b)(6), the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2). A complaint is required to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

To test the sufficiency of the complaint, the court "must take three steps." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, a court must "take note of the elements a plaintiff must plead to state a claim." *Id*. (internal quotations and brackets omitted). Second, the court must identify allegations that are merely legal conclusions "because they . . . are not entitled to the assumption of truth." *Id*. While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. 1955). Third, a court should assume the veracity of all well-pleaded factual allegations and "then determine whether they plausibly give rise to an entitlement to relief." *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679, 129 S. Ct. 1937).

The Court must liberally construe a complaint filed by a *pro se* plaintiff and hold it "'to less stringent standards than formal pleadings drafted by lawyers.'" *Fantone v. Latini*, 780 F.3d 184 (3d Cir. 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)); *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007). Yet, even *pro se* plaintiffs "must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted). Courts should allow *pro se* litigants leave to file a curative amended complaint even when a plaintiff does

2

not seek leave to amend, unless such an amendment would be inequitable or futile. *See Estate of Lagano v. Bergen Cty. Prosecutor's Office*, 769 F.3d 850, 861 (3d Cir. 2014).

## II. Plaintiff's Complaint

Plaintiff and his minor daughter MMJ commenced this action on August 30, 2018 against Defendants Lackawanna County State Prison (the "Prison") and the Warden of that facility. (*See* Doc. 1, ¶¶ 3-4). Jelen subsequently supplemented his Complaint to name the United States of America, Lackawanna County (the "County"), the Commonwealth of Pennsylvania, and the Pennsylvania Department of Corrections as Defendants. (*See* Doc. 8, ¶¶ 4-6).

In the Complaint, Plaintiff alleges that on January 31, 2018, he was sentenced in this Court and immediately taken into custody by the United States Marshals Service and transported to the Prison. (*See* Doc. 1, ¶¶ 11-13). Plaintiff was at the Prison from that day until February 22, 2018. (*See* Doc. 9, ¶ 28). Jelen suffers from a severe form of Chron's disease, which requires strict diet controls and medications. (*See* Doc. 1, ¶¶ 14-17). His disease also requires frequent bandage changes. (*See id*. at ¶ 24).

Upon arrival at the Prison, Plaintiff met with a medical practitioner and provided the contact information for his pharmacy. (*See id*. at ¶ 21). Nevertheless, despite his constant pleas over the next three weeks, medical and correctional staff provided him a single bandage. (*See id*. at ¶ 26). Plaintiff was also denied all of his prescribed medications during this time. (*See id*. at ¶ 27). Plaintiff was also given food that he was unable to consume based on his medical condition. (*See id*. at ¶ 38-40). His request for a liquid diet was ignored. (*See id*.). Plaintiff lost fourteen pounds in three weeks as a result. (*See* Doc. 9, ¶ 13(f)(1)). Plaintiff was also subjected to poor hygiene conditions at the Prison. (*See* Doc. 1, ¶¶ 44-47).

Plaintiff requested a visit with MMJ during his stay at the Prison through the written request system. (*See id*. at ¶ 49). He was advised that his wife and daughter

could only visit during normal hours and that contact visits were prohibited. (*See id*. at ¶ 50). He was only permitted to see his daughter through glass. (*See id*. at ¶ 52).

Beginning on February 1, 2018, Plaintiff's commissary account was funded by outside family members. (*See id*. at ¶ 55). Once he was taken from the Prison by U.S. Marshals, however, the balance in that account was not returned. (*See id*. at ¶ 57).

Additionally, while he was in the Prison, Plaintiff was denied access to counsel and he was not provided any recreation time. (*See* Doc. 9, ¶¶ 13(e)-(f)).

Based on the foregoing, Plaintiff commenced this action asserting claims against the Prison, the Warden, the United States of America, the County, the Commonwealth of Pennsylvania, and the Pennsylvania Department of Corrections. Specifically, Plaintiff appears to assert constitutional claims for the denial of medical care/medical diet, denial of contact visits with his wife and daughter, denial of legal calls with his counsel, deprivation of access to the law library, refusal to refund the balance of his commissary account, denial of recreation time, and violations of his equal protection rights. In addition, Plaintiff claims that Defendants violated the Americans with Disabilities Act.

### III. Discussion

**A.     MMJ's Claims.**

Plaintiff's minor child's purported claims will be dismissed without prejudice. As a non-attorney proceeding *pro se*, Plaintiff cannot represent his daughter in this matter or raise claims on her behalf. *See Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2011) ("[A] plaintiff must assert his or her own legal interests rather than those of a third party" to have standing to bring a claim); *Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa.*, 937 F.2d 876, 882-83 (3d Cir. 1991) (holding that a non-attorney parent could not proceed *pro se* on behalf of his children in federal court); *People ex rel. Snead v. Kirkland*, 462 F. Supp. 914, 917-18 (E.D. Pa. 1978) (*pro se* plaintiff may represent himself with respect to his individual claims, but cannot act as an attorney for others in a federal court). In other words,

4

"[a]s a non-attorney, [Plaintiff] is permitted to represent [him]self in federal court, but [ ]he cannot act as '*pro se* counsel' for [his] child, which [ ]he [seeks] to do here." *Watson v. Washington Twp. of Gloucester Cty. Pub. Sch. Dist.*, 413 F. App'x 466, 468 (3d Cir. 2011). Accordingly, MMJ's claims will be dismissed without prejudice.

**B.     Claims Against the United States.**

Plaintiff's claims against the United States will be dismissed with prejudice. "A *Bivens* action is not available against the United States," so the constitutional claims purportedly brought against it will be dismissed. *Dambach v. United States*, 211 F. App'x 105, 107-08 (3d Cir. 2006) (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72, 122 S. Ct. 515, 151 L. Ed. 2d 456 (2001); *FDIC v. Meyer*, 510 U.S. 471, 486 & n.11, 114 S. Ct. 996, 127 L. Ed. 2d 308 (1994); *Jaffee v. United States*, 592 F.2d 712, 717 (3d Cir. 1979)).

**C.     Claims Against the Commonwealth of Pennsylvania and the Pennsylvania Department of Corrections.**

The Pennsylvania Department of Corrections is "entitled to Eleventh Amendment immunity from suit and [is] not [a] person[ ] subject to suit under 42 U.S.C. § 1983." *Foye v. Wexford Health Sources, Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017) (citing *Laskaris v. Thornburgh*, 661 F.2d 23, 25-26 (3d Cir. 1981); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45 (1989)). The claims against the Pennsylvania Department of Corrections will be dismissed with prejudice.

Likewise, "[t]he Commonwealth of Pennsylvania is entitled to Eleventh Amendment immunity from claims under § 1983, and is not considered to be a "person" subject to liability for purposes of § 1983." *Kennedy v. Commonwealth*, 745 F. App'x 473, 474 (3d Cir. 2018) (citing *Will*, 491 U.S. at 65-66, 109 S. Ct. 2304). So the claims against the Commonwealth of Pennsylvania will also be dismissed with prejudice.

5

**E.     Claims Against the Prison.**

The claims against the Prison will also be dismissed with prejudice because the "Lackawanna County Prison . . . is not an entity subject to suit under 42 U.S.C. § 1983." *Crawford v. McMillan*, 660 F. App'x 113, 116 (3d Cir. 2016) (citing *Fisher v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)).

**F.     Claims Against the Warden.**

Individual liability can be imposed under 42 U.S.C. § 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)); *Sutton v. Rasheed*, 323 F.3d 236, 249-50 (3d Cir. 2003). The personal involvement of a defendant in a § 1983 action may be shown "through allegations of personal direction or of actual knowledge and acquiescence." *Argueta v. U.S. ICE*, 643 F.3d 60, 72 (3d Cir. 2011) (quoting *Rode*, 845 F.2d at 1207). Such allegations, however, must be made with appropriate particularity in that a compliant must allege the particulars of "conduct, time, place, and persons responsible." *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208. Moreover, a defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Olivia*, 226 F.3d 198, 201-202 (3d Cir. 2000). Allegations that a supervisor "had constructive knowledge of a subordinate's unconstitutional conduct simply because of his role as a supervisor" do not suffice. *Broadwater v. Fow*, 945 F. Supp. 2d 574, 588 (M.D. Pa. 2013) (citing *C.H. ex rel. Z.H.*, 226 F.3d at 202).

The Prison Warden is named as a defendant in the Complaint. But, Plaintiff does not allege any facts establishing a basis of liability against the Warden, nor does he identify any actions the Warden took that led to the alleged violations of his rights.

Accordingly, the Warden will be dismissed as a defendant for lack of personal involvement, but Plaintiff will be given the opportunity to file an amended complaint to state his personal participation in the alleged wrongdoing.

**G.     Claims Against the County.**

A governmental entity cannot be held liable for the alleged unconstitutional actions of its employees on a theory of respondeat superior. *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978. Rather, to state a plausible § 1983 claim against a municipality, the complaint must contain factual allegations showing that a municipal custom or policy caused the constitutional violation. *Id.*; *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (the plaintiff must "identify a custom or policy, and specify what that custom or policy was"). A "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" must be established. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989).

"Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Berg v. Cty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000) (internal citations and alterations omitted). A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Monell*, 436 U.S. at 691, 98 S. Ct. 2018.

A custom may be demonstrated by showing that a practice is so well-settled and widespread that the policymaking officials had actual or constructive knowledge of it. *Berg*, 219 F.3d at 276. To show causation where the alleged policy or custom does not facially violate constitutional rights, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bd. Of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 137 L. Ed. 2d. 626 (1997).

Under certain circumstances, a municipality's failure to properly train its

7

employees and officers can amount to a "custom" that will trigger liability under § 1983. *See City of Canton*, 489 U.S. at 388, 109 S. Ct. 1197. "Where the policy 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of person with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A failure to train claim requires a plaintiff to identify a failure to provide specific training that has a causal nexus with his or her injury and must demonstrate that the failure to provide that specific training can be reasonably said to reflect a deliberate indifference to whether constitutional deprivations of the kind alleged occur." *Palakovic v. Wetzel*, 854 F.3d 209, 233 (3d Cir. 2017) (quotation and citation omitted). Moreover, a failure to train claim requires an allegation that failure or inadequacy amounts to deliberate indifference on the part of the municipality. *Forrest v. Parry*, 930 F.3d 93 (3d Cir. 2019) (citation omitted). This consists of allegations that the "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights. *Id*. (citation omitted).

Liberally construed, the Complaint sets out a claim against the County for denial of medical care/medical diet on a failure to train theory. So this claim survives screening.

**H.    ADA Claim.**

Plaintiff's claim under the Americans with Disabilities Act ("ADA"), Title II, 42 U.S.C. § 12132, will be dismissed with prejudice. To state a claim for disability discrimination under Title II of the ADA, Plaintiff must allege that he: "(1) has a disability; (2) was otherwise qualified to participate in [a County] program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of h[is] disability." *Chambers ex rel. Chambers v. School Dist. of Phila. Bd.*

*of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009). A viable claim requires Plaintiff to allege that he has been excluded from participation in services, programs, or activities because of his disability. *See Pierce v. Pitkins*, 520 F. App'x 64, 67 (3d Cir. 2013) (dismissal of ADA claim is appropriate where inmate's complaint alleged a violation of the ADA but "failed to allege any facts that demonstrated that the alleged inadequate or improper medical care he received was because of a disability."); *see also Brown v. Deparlos*, 492 F. App'x 211, 215 (3d. Cir. 2012) (claim properly dismissed where plaintiff failed to "allege any facts that demonstrate that the alleged inadequate or improper medical care he received was because of a disability"); *Mutschler v. SCI Albion CHCA Health Care*, 445 F. App'x 617, 621 (3d Cir. 2011) (dismissal appropriate where complaint alleges denial of adequate medical care, but fails to set forth facts that demonstrate that alleged improper medical care was because of his disability); *Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("the [ADA] would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . [t]he ADA does not create a remedy for medical malpractice."). The same result is compelled here since Plaintiff does not claim that the deficient medical care he received was because of his disability.

**I.  Visitation Claim.**

Plaintiff claims that his constitutional rights were violated because he was not permitted to have a contact visit with his daughter and he was required to meet with her "through glass." "Inmates have no unfettered constitutional right to visitation free of regulation." *Rieco v. Hebe*, 633 F. App'x 567, 570 (3d Cir. 2015) (citing *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 758 (3d Cir.1979) (prison officials may limit the nature of inmate visitation)); *Perry v. Lackawanna Cnty. Children & Youth Serv.*, 345 F. App'x 723, 726-27 (3d Cir.2009) (temporary loss of visitation does not qualify as an atypical or significant hardship because "prisoners do not have constitutionally-protected interests in prison visitation"). This claim will be dismissed with prejudice.

9

**J.    Denial of Access to Law Library and Legal Telephone Calls.**

Plaintiff next contends that he was denied sufficient access to the Prison library. Adequate prison law libraries are a component of the right of access to the courts. A First Amendment denial of access to the court cause of action is stated by alleging that a particular defendant: (1) interfered with; (2) a nonfrivolous attack on conditions of confinement, or the defense against a criminal charge, a direct appeal from or collateral attack on a criminal conviction, or a habeas corpus petition. *See Lewis v. Casey*, 518 U.S. 343, 353 n.3 & 355 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977). However, as the Supreme Court made clear in *Lewis*, a plaintiff must demonstrate actual injury. In other words, the inmate must allege some legal loss. Plaintiff has failed to allege or identify any actual injury that he suffered. Consequently, the claim will be dismissed, but he will given leave to amend to properly state a claim for the denial of access to the law library.

Plaintiff's denial of telephone calls to his attorney claim fails for the same reason. Specifically, Plaintiff fails to identify any actual injury that resulted from his inability to call his attorney while incarcerated in the Prison. *See Sanchez v. Walton*, No. 18-3415, 2019 WL 249537, at *3 n.4 (E.D. Pa. Jan. 16, 2019); *see also Inqalls v. Florio*, 968 F. Supp. 193, 203–04 (D.N.J. 1997) ("[L]imited access to telephone calls . . . is not a constitutional violation so long as inmates can communicate with their counsel in writing or in person by visits."); *Abu-Jamal v. Kerestes*, No. 15-967, 2015 WL 4184054, at *6-7 (M.D. Pa. Aug. 5, 2016).

**K.    Equal Protection.**

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This Clause "embodies the general rule that all persons similarly situated should be treated alike." *Todd v. Kyler*, No. 5-1994, 2007 WL 61062, at *6 (M.D. Pa. Jan. 5, 2007) (citing *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). While

prisoners' constitutional rights are limited following incarceration, prisoners remain "protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *see also Brown v. Byrd*, No. 00-3118, 2000 WL 1780234, at *4 (E.D. Pa. Dec. 1, 2000) (citing *Waterman v. Farmer*, 183 F.3d 208, 212 (3d Cir. 1999)). Of course, despite the Clause's sweeping language, it does "not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct 2326, 120 L. Ed. 2d 1 (1992).

Thus, to state a claim under 42 U.S.C. § 1983 premised on membership in a class in violation of the Equal Protection Clause, an inmate must allege that he is a member of a protected class and that he was treated differently than similarly situated inmates. *See Rivera v. Chester Cnty*, No. 15-5609, 2017 WL 1150622, at *28 (E.D. Pa. Mar. 28, 2017) (O'Neill, J.) (citing *Cleburne*, 473 U.S. at 439, 105 S. Ct. 3249). Where the plaintiff does not claim membership in a protected class, he must state facts showing that: "(1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006);

Here, Plaintiff fails to allege an equal protection claim under either theory. Nothing in the Complaint suggests that Plaintiff was subject to disparate treatment based on his membership in a protected class, nor does he allege that he was treated differently from any similarly situated inmates. Thus, the claim will be dismissed, but Plaintiff will be given the opportunity to amend.

**L.   Denial of Medical Care/Medical Diet.**

The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981), but neither does it permit inhumane ones. Prison officials have a duty under the Eighth Amendment to provide

11

humane conditions of confinement. Thus, the Eighth Amendment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. *Farmer*, 511 U.S. at 832, 114 S. Ct. 1970.

For one, "the Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide basic medical treatment to those who it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). This follows from the view that the "denial of medical care may result in pain and suffering, which no one suggests would serve any penological purpose." *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). To state a claim under the Eighth Amendment for the denial of medical care, a prisoner must allege "(1) that the defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse*, 182 F.3d at 197.

"[P]rison officials violate an inmate's Eighth Amendment rights when they deprive her of 'a single identifiable human need such as food, . . .'" *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304, 111 S. Ct. 2321, 2327, 115 L. Ed. 2d 271 (1991)). But, "deprivation of a single meal does not rise to the level of an Eighth Amendment violation because 'only a substantial deprivation of food to a prisoner' states a viable Eighth Amendment claim." *Rieco v. Moran*, 633 F. App'x 76, 78 (3d Cir. 2015) (quoting *Lindsey v. O'Connor*, 327 F. App'x 319, 321 (3d Cir. 2009)); *Zanders v. Ferko*, 439 F. App'x 158, 160 (3d Cir. 2011) ("the alleged deprivation of three meals over two days fails to rise to the level of a constitutional violation"); *see also Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006) ("A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim under the Eighth Amendment.") *cf. Foster v. Runnels*, 554 F.3d 807, 812-23 (9th Cir. 2009) (denial of 16 meals in 23 days was a sufficiently serious deprivation of food). Accordingly, "the

deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation." *Orum v. Rink*, No. 18-158, 2018 WL 6695585, at *2 (W.D. Mich. Dec. 20, 2018) (citing, *inter alia*, *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (same)).

Based on the foregoing, Plaintiff has pled sufficient facts to survive screening on his denial of medical care/medical diet claim against the County on a failure to train theory. Thus, he will be permitted to proceed with this claim against the County.

Plaintiff's medical care/medical diet claim will otherwise be dismissed, but he will be given leave to amend this claim. To the extent Plaintiff wishes to proceed on such a claim against individual Prison employees, he must identify their personal involvement in the alleged denial of medical care/medically necessary food. Moreover, insofar as Plaintiff is attempting to proceed against the County based on a policy of providing inadequate care, he must, at a minimum, identify the policy that resulted in the allegedly deficient medical attention he received. *See*, *e.g.*, *Benussi v. Luzerne Cty.*, No. 17-1668, 2018 WL 4110559, at *5 (M.D. Pa. Aug. 29, 2018) ("While a 'naked assertion' that the County Defendants 'considered cost' in treating Benussi's injury would not 'suffice to state a claim for deliberate indifference,' the allegation that the County Defendants maintained a policy of denying necessary medical care because of cost does suffice.").

**M.   Loss of Commissary Funds.**

Inmates have a property interest in funds held in prison accounts. *See Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997). Here, Plaintiff alleges that after he was taken from the Prison by the U.S. Marshals, his requests for the return of the balance

13

of his account were ignored. However, he has not identified any individual in his Complaint that is responsible for the administration of his Prison account and/or an individual that refused to refund the balance, nor has he claimed that the County has a policy of refusing to return inmates the balance of their accounts when they are transferred or released from the Prison. Accordingly, the claim will be dismissed without prejudice.

**N.    Denial of Recreation Time.**

Plaintiff also contends that he was completely denied recreation time while he was housed at the Prison. This is an Eighth Amendment claim, which requires Plaintiff to show:

> (1) the deprivation alleged was objectively, "sufficiently serious" such that the prison officials' acts or omissions resulted in the denial of "the minimal civilized measure of life's necessities"; and (2) that the prison officials exhibited a "deliberate indifference" to his health and safety. However, where conditions are not "cruel and unusual" but merely "restrictive and even harsh," they do not violate the Eighth Amendment but rather "are part of the penalty that criminal offenders pay for their offenses against society."

*Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (citation and internal citation omitted). Whether a "deprivation of outdoor exercise amounts to a substantial deprivation" requires consideration of "the totality of the circumstances, including, but not limited to, the length of the deprivation, the availability of recreation within the cell, and whether the inmate suffered any ill health effects as a result of the deprivation." *Id*. (citations omitted). In the matter *sub judice*, Plaintiff alleges only that he was denied exercise for approximately three weeks without any corresponding claim that he suffered ill medical effects as a result. This is insufficient to state a claim on this basis. *See id*. ("the temporary denial of out of cell exercise for twenty-eight days was not a substantial deprivation").

**O.    Leave to Amend**

As stated, Plaintiff will be permitted to proceed at this time with his denial of medical care/medical diet claim as against the County only. However, he will be

14

granted twenty-one days to file an amended complaint concerning his claims regarding the denial of the balance of his inmate account, violation of his equal protection rights, and denial of access to the law library and legal calls. Furthermore, Plaintiff is given leave to amend to allege the personal involvement of the Warden and any other individuals in these claimed constitutional violations. If Plaintiff decides to file an amended complaint, he is advised he must clearly designate on the face of the document that it is the "Amended Complaint," it must bear the docket number assigned to this case, and it must be retyped or legibly rewritten in its entirety, preferably on the court-approved form. In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F. Supp. 1185, 1198 (M.D. Pa. 1992). Plaintiff is advised that any amended complaint he may file supersedes (replaces) the original complaint, so he must restate the allegations pertaining to his medical care claim against the County. In addition, it must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1; *see also W. Run Student Hous. Assocs. V. Huntingdon Nat'l Bank*, 712 F.3d 165, 171 (3d Cir. 2013).

      Plaintiff is also advised that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in individually numbered paragraphs in short, concise and simple statements. *Id*. The allegations should be specific enough as to time and place and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual defendant did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. 1937. Plaintiff must also specify the relief he seeks. Finally, Plaintiff is reminded of his obligation to advise the Court of any change of address. *See* M.D. Pa. LR 83.18.

      If Plaintiff files an amended pleading within twenty-one days, the Court will screen that pleading in accordance with 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). If he does not, all claims but the denial of medical care/medical diet

claim against the County will be dismissed with prejudice, and the action will proceed on that claim alone.[1]

    An appropriate order follows.

September 26, 2019                                        /s/ A. Richard Caputo
Date                                                  A. Richard Caputo
                                                          United States District Judge

---

[1]     Plaintiff has also filed a motion seeking a "no contact order" between himself and Defendants. That motion is denied because, among other reasons, he is not incarcerated at the Prison.